**CITY OF WILMINGTON and Department of Public Safety, Defendants below, Appellants and Cross-Appellees,**

v.

**WILMINGTON FIREFIGHTERS LOCAL 1590, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, Plaintiff below, Appellee and Cross-Appellant.**

Supreme Court of Delaware.

Submitted Jan. 9, 1978.

Decided April 7, 1978.

Perry F. Goldlust, Wilmington, and Charles H. Toliver, IV, Asst. City Sol., Wilmington, for defendants below, appellants and cross-appellees.

Francis S. Babiarz, of Biondi & Babiarz, P. A., Wilmington, for plaintiff below, appellee and cross-appellant.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

DUFFY, Justice:

This appeal involves a controversy between the City of Wilmington and a union representing Wilmington firemen over the proper forum for resolving the union's complaint that the City, by amending a medical plan covering its firefighters, violated both a State statute and the contract between the parties.

## I

The facts are these:

The City (defendant) made a collective bargaining agreement with Wilmington Firefighters Local 1590, International Association of Firefighters (plaintiff) governing wages and other terms of employment. The official personnel rules and regulations of the Wilmington Bureau of Fire were incorporated in the contract. Thereafter, the City abolished the position of Fire Physician and adopted a revised medical plan for its firemen. The Association then filed an action in the Court of Chancery alleging that the City had, by so doing, violated 19 *Del.C.* ch. 13 and the collective bargaining agreement. The Union sought injunctive relief which would eliminate the alleged violations.

The City moved to dismiss the complaint on jurisdictional grounds, arguing that the collective bargaining agreement, which created a grievance and arbitration procedure for resolving disputes, was the Union's exclusive remedy.[1] The parties agreed to a stay until the Court decided a then pending action brought by Wilmington policemen against the City and involving the same issues. *Fraternal Order of Police, Lodge No. 1 v. City of Wilmington,* Del.Ch., C.A. No. 4783. The latter case was decided by an unpublished opinion, dated December 23, 1975, in which the then Chancellor stayed the action on condition that the City agree to certain modifications in the grievance procedure established by the contract between the City and the Union.[2] Relying on the stipulation of the parties and the principle of *stare decisis,* the Court, in this case, denied the City's motion to dismiss and

imposed the same conditions as those fixed in *Fraternal Order of Police, Lodge No. 1.* The City filed this appeal. We reverse.

## II

The ultimate question before us concerns the action which should be taken by a Delaware Court when it is asked to award relief on grounds that allegedly violate both a State statute and a labor relations contract in which the parties established a binding and final settlement procedure for disputes.

In considering the question and in formulating an opinion, we emphasize that the alleged violation concerns a refusal-to-bargain. That is important in limiting the impact of this ruling on judicial determinations of future labor disputes in which public employees are involved.

The Union argues that the Court should proceed to determine the merits of the case, that the arbitration clause in a labor agreement is an optional remedy for breach of contract and, in any event, that the procedure adopted by the Trial Court is reasonable and should be approved.

The City, on the other hand, contends that the Court of Chancery should have abstained from exercising its jurisdiction until contract arbitration had been completed and that the Court erred by imposing terms which amount to an amendment of the contract without the City's consent.

The statutory sections allegedly violated by the City, 19 *Del.C.* ch. 13, concern a public employer's duty to engage in collective bargaining with an exclusive bargaining representative.[3] And the contract pro-

---

1. Section 12 of Article III–A of the agreement defines the questions which must be submitted to the grievance-arbitration procedure. The City's alleged violations are within the scope of Section 12 since they are "disputes or misunderstandings . . . between the parties concerning the application or interpretation" of their collective bargaining agreement.

2. The Court's order included the following conditions:

   (1) that the grievance procedure begin with a written complaint which must be discussed

with the Director of Personnel and the Commissioner of Public Safety;

   (2) that the City must supply at its expense the means of securing a *verbatim* record in any Grievance Appeal Board proceeding;

   (3) that depositions can be taken by plaintiff of persons noticed (not exceeding 3) between the filing of the complaint and the discussion required by (1), supra.

3. 19 *Del.C.* ch. 13, which became effective on June 15, 1965, confers rights on public employees, including the right to organize, § 1302; to be free from restraint, coercion or discrimina-

visions allegedly violated are the Bureau of Fire rules and regulations incorporated into the collective bargaining agreement. As we have noted, the violations are said to result from the City's independent or unilateral abolition of the Fire Physician position and implementation of a revised medical plan. The charge is that such actions constitute a refusal-to-bargain, and interference, restraint and coercion of protected labor rights, and a violation of contractually agreed-upon medical programs.

### III

The appropriate point of entry for a Delaware Court into this kind of controversy is an issue of first impression. In beginning our review, we assume that the City's actions constitute both a statutory and a contractual violation. This kind of controversy has been litigated elsewhere and so we look for guidance to the procedure adopted in the Federal forums and by the Courts and administrative tribunals in other States for dealing with such situations.

■ First, as to Federal precedent: Section 10 of the National Labor Relations Act (Act), 29 *U.S.C.* § 151, et seq., authorizes the National Labor Relations Board (NLRB) to adjudicate statutory violations constituting unfair labor practices arising under the Act. However, the existence of a claimed contract violation and the availability of a contract remedy—arbitration, for example—does not divest the NLRB of jurisdiction to adjudicate an alleged statutory violation for the same conduct. *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967). NLRB jurisdiction continues but, if the labor dispute involves both allegations (that is, statutory as well as contract violations) and if it is at a pre-arbitral stage, the NLRB will defer to the contractually agreed-upon arbitration procedures when the issue is a refusal-to-bargain. *Collyer Insulated Wire,* 192 NLRB 837, 77 LRRM 1931 (1971).

Speaking of the NLRB policy with approval, the United States Supreme Court in *William E. Arnold Co. v. Carpenters District Council,* 417 U.S. 12, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974), said this:

". . . Board policy is to refrain from exercising jurisdiction in respect of disputed conduct arguably both an unfair labor practice and a contract violation when, as in this case, the parties have voluntarily established by contract a binding settlement procedure. See, *e. g., The Associated Press,* 199 N.L.R.B. 1110 (1972); Eastman Broadcasting Co., 199 N.L.R.B. 434 (1972); *Laborers Local 423,* 199 N.L.R.B. 450 (1972); *Collyer Insulated Wire,* 192 N.L.R.B. 837 (1971). The Board said in *Collyer,* 'an industrial relations dispute may involve conduct which, at least arguably, may contravene both the collective agreement and our statute. When the parties have contractually committed themselves to mutually agreeable procedures for resolving their disputes during the period of the contract, we are of the view that those procedures should be afforded full opportunity to function . . . . We believe it to be consistent with the fundamental objectives of Federal law to require the parties . . . to honor their contractual obligations rather than, by casting [their] dispute in statutory terms, to ignore their agreed-upon procedures.' *Id.,* at 842–843. The Board's position harmonizes with Congress' articulated concern that, '[f]inal adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement . . .' § 203(d) of the LMRA, 29 U.S.C. § 173(d)."

94 *S.Ct.* at 2072.

When the NLRB does defer, it retains jurisdiction to consider an application for additional relief on a showing that either: (1) the dispute has not been resolved or submitted to arbitration with reasonable

---

tion in the free exercise of any rights under chapter 13, § 1303; to have bargaining units established and exclusive bargaining represent-

atives elected, §§ 1304–1306; and the right to bargain collectively with the public employer, § 1309.

promptness, or (2) the arbitration procedures have been unfair or have rendered a result repugnant to the Act. *Collyer Insulated Wire,* supra.

The Federal Courts of Appeal have consistently upheld the *Collyer* deferral policy. See, e. g., *Local Union No. 2188, Int. Bro. of Elec. Wkrs. v. NLRB,* 161 U.S.App.D.C. 168, 494 F.2d 1087 (1974), *cert. denied,* 419 U.S. 835, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974); *Provision House Workers Union Local 274 v. NLRB,* 9 Cir., 493 F.2d 1249 (1974), *cert. denied,* 419 U.S. 828, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974); *Nabisco, Inc. v. NLRB,* 2 Cir., 479 F.2d 770 (1973). And, as we have indicated, the United States Supreme Court noted its approval by saying that the pre-arbitral deferral policy "harmonizes" with a Legislative preference for voluntary settlement procedures in labor disputes. *William E. Arnold Co. v. Carpenters District Council,* supra.

A number of State labor commissions, including those in Massachusetts, Michigan, New Jersey and New York, have adopted deferral doctrines in public employee refusal-to-bargain situations. 1 *Pub.Empl.Barg.* (CCH) ¶ 5015. For example, the Michigan Employment Relations Commission has expressly approved and cited the *Collyer* deferral doctrine. Deferral has been held appropriate in Michigan public employee cases where there is a contractual provision for arbitration and the dispute can arguably be resolved under the contract language; and allegations of unilateral changes in terms and conditions of employment in violation of Michigan's Public Employment Relations Act have frequently prompted deferral to arbitration. See 1 *Pub.Empl.Barg.* (CCH) Michigan ¶ 5015 and cases cited therein.

We conclude from this brief review that a deferral policy is widely followed and has much to commend it in practice.

### IV

Returning now to the present dispute, when it was placed before the Court of Chancery, that Court had several options available. We know, of course, what the Court did. But, it could have taken jurisdiction and adjudicated the dispute. Or, it could have dismissed the action as premature and left the parties to pursue their contract remedies. Or, the Court could have followed the *Collyer* practice by taking jurisdiction and then staying the action until after the parties had followed the contract procedure.

■ We conclude that the *Collyer* deferral to arbitration is a sound and sensible policy for Delaware to follow. Other States, many of them with large populations and complex governments have followed the Federal lead. And there is similarity between the Federal Labor Act and 19 *Del.C.* ch. 13, as expressly noted by Judge Stapleton in *Cofrancesco v. City of Wilmington,* D.Del., 419 F.Supp. 109 (1976):

"Delaware law extends to State, county and municipal employees many of the same rights to . . . bargain collectively that the [federal labor law] affords to employees in the private sector. 19 *Del.C.* § 1301, et seq. In cases where the problems raised under Delaware's labor law are similar to those that arise under the [federal law], Delaware could be expected to consider and, in all likelihood, follow federal law."

*Id.,* at 111.

And our holding is supported by the long-accepted view that a settlement in a labor dispute is often best achieved through use of the parties' voluntary agreement to arbitrate. *United Steelwkrs. of Amer. v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelwkrs. of Am. v. Warrior & Gulf N. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelwkrs. of A. v. Enterprise W. & Co. Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)—*Steelworkers Trilogy.* For that reason, the arbitral process is sometimes viewed as superior to the judicial process because of an arbitrator's greater knowledge and experience regarding the parties, and because he has been selected by them. Along the same line, we note that Title 19 of the Delaware Code indicates a strong State policy favoring vol-

untary mediation as a means to promote industrial peace in Delaware. See 19 *Del.C.* §§ 110, 111(a), 1310. And pre-arbitral deferral will "require the parties here to honor their contractual obligations rather than, by casting this dispute in statutory terms, to ignore their agreed-upon procedures." *Collyer Insulated Wire,* supra. Finally, in this case, the parties' own agreement reveals a preference for the grievance-arbitration procedure by stating in Article III–A, Section 1:

> "The grievance procedures set forth in this section are established in order to provide adequate opportunity for members of the Department of Public Safety to bring forth their views relating to any unfair or improper aspect of their employment situation and to seek correction thereof."

 It follows that the Court of Chancery was correct in accepting jurisdiction while ordering the parties to arbitrate, but that the Court erred in requiring modifications to the contractually agreed-upon grievance procedures. Undoubtedly the Court wanted to be helpful but, under the circumstances, that constituted unwarranted judicial meddling in the parties' contractual relations. See *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 912, 913, 11 L.Ed.2d 898 (1964); and compare *Safe Harbor Fishing Club v. Safety Harbor Realty Co.,* 107 A.2d 635 (1953). The case should have been stayed and the parties directed to proceed under the contract. And jurisdiction should have been retained by the Court to consider any application for relief on the ground that the dispute is not being resolved by arbitration with reasonable promptness, or that the arbitral process had been unfair, or that it resulted in an award repugnant to 19 *Del.C.* ch. 13, or that it failed to resolve the statutory claim. But, otherwise the Court should not have encumbered the agreement which the parties had made with its own notion of what was fair.

\* \* \* \* \* \*

In adopting a pre-arbitral deferral policy, we emphasize that while the parties are a public employer and public employees, the present dispute is grounded in a non-public interest, private sector-type issue which arises in a refusal-to-bargain context. The case involves only that kind of controversy and our ruling and comments are limited to it. In other words, nothing said herein applies to an action which affects the public interest—a strike by public employees, for example. In that kind of situation the issues are different and so is the Court's responsibility. Nor are we here concerned with a post-arbitral dispute between the parties.

\* \* \* \* \* \*

Reversed and remanded for further proceedings consistent herewith.