AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 81, LOCAL 2004, Petitioner Below, Appellant,

v.

STATE of Delaware, DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES, and Delaware Public Employment Relations Board, Respondents Below, Appellees.

No. 336, 1996.

Supreme Court of Delaware.

Submitted: May 13, 1997.
Decided: July 7, 1997.

Perry F. Goldlust (argued), and Susan E. Kaufman, Heiman, Aber & Goldlust, Wilmington, for Appellant.

Janice R. Tigani (argued), and Michele C. Gott, Deputy Attorneys General, Department of Justice, Wilmington, for Appellees.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court en Banc.

WALSH, Justice.

In this appeal from the Court of Chancery, we confront the question of whether the Public Employment Relations Board of the State of Delaware lacked jurisdiction to consider an unfair labor practice complaint arising out of an employee grievance. The Court of Chancery ruled that the Board correctly declined jurisdiction because the underlying grievance arose out of a job reclassification dispute under the State Merit System. We

conclude, however, that the grievance was properly assertable under the collective bargaining agreement between the State and the union representing the affected employees. Accordingly, we reverse.

## I

The background of this underlying dispute is not controverted and is drawn principally from the decision of the Court of Chancery. In August, 1994, the Department of Services for Children Youth and Their Families (the "Department") announced the creation of 39 new positions called "Treatment Specialists" to serve in its workforce at the Ferris School, a juvenile rehabilitation facility. To create the new positions, the Department reclassified existing positions originally titled Youth Rehabilitation Counselor II ("YRC II"). One qualification for the Treatment Specialist position was that the employee possess a college degree. In order to accommodate YRC II employees who lacked that qualification, the Department initiated a program allowing YRC II employees with at least 55 college credits to complete their degree at State expense. Some YRC II employees lacked the 55 credit requirement, however, and were informed that they would be relegated to other duties or laid off by the end of the year.

The collective bargaining agreement between the State and certain of its employees represented by the appellant, American Federation of State, County, and Municipal Employees, Council 81, Local 2004, ("The Union"), provides that alleged violations of the Merit System be processed through the grievance process of the collective bargaining agreement. The first three steps of the grievance process involve hearings before representatives of the Department. When a grievance is appealed to Step 4 it is heard by a hearing officer, either the Deputy Director of Labor Relations or his designee. By Executive Order, however, the Governor has directed that State agencies treat Step 4 decisions as final. Employees and their union representatives continue, however, to have the right to appeal beyond the Step 4 process.

On November 22, 1994, several YRC II counselors, who did not have 55 college credits, filed a grievance under the Merit System. These grievants sought to be retained in their current positions until they could qualify as Treatment Specialists. This grievance, referred to as the "Bassett" grievance was heard at Step 4 of the grievance process by the Deputy Director of Labor relations and denied on March 29, 1995. That decision was not appealed and the Department viewed the ruling as definitive with regard to those employees not meeting the 55 hour credit requirement.

On March 1, 1995, prior to the Bassett decision, two employees on whose behalf this appeal was taken, Theo Scott and John Hector, also filed grievances directed to the 55 college credit requirement and alleged violations of both the collective bargaining agreement and the Merit Rules. The grievance was disallowed at the Department level and eventually was heard at the Step 4 level by Ralph Head, a hearing officer who had not participated in the Bassett decision. Contrary to the Bassett decision, Head, while upholding the Department's right to effect the reclassification, ruled that Scott and Hector must be afforded the opportunity to obtain the degree necessary to qualify for the specialist position.

In the face of two conflicting decisions involving similarly situated YRC II counselors, and in light of the Governor's Executive Order prohibiting the Department from appealing a Step 4 decision, the Department neither appealed nor implemented the Head Decision. In response to the Department's failure to implement the Head Decision, the Union filed an unfair labor practice charge with the Executive Director of the Public Employee Relations Board ("PERB") alleging a violation of 19 Del.C. §§ 1307(a)(1)[1] and (a)(5). The basis of its claim was the Department's failure to implement the Hearing Officer's decision at Step 4 of the contractually agreed upon grievance procedure,

---

1. The alleged violation of 19 Del.C. § 1307(a)(1) was dismissed at the conclusion of the hearing by agreement of the parties.

thereby making a unilateral change in the terms and conditions of the collective bargaining agreement. On July 20, 1995, one day after the Union filed its unfair labor practice charge, the Department filed a request for clarification with the State Personnel Commission asking which decision, *Head* or *Bassett*, should control.

The Executive Director of the PERB dismissed the Union's unfair labor practice charge for lack of jurisdiction, explaining that the subject of job classification raised in the Hector and Scott grievances was not a mandatory subject of collective bargaining and therefore falls outside of the PERB's jurisdiction. The PERB found, rather, that because the grievance alleges a Merit Rule violation, it was within the exclusive jurisdiction of the Merit Employee Relations Board ("MERB"). The Union appealed the Executive Director's decision to the full PERB which affirmed the Executive Director's ruling that the PERB lacked jurisdiction. The Union then appealed to the Court of Chancery, which also affirmed. This appeal followed.

## I

 The Court of Chancery's construction of Delaware statutory law on conceded facts is subject to *de novo* review. *State Dept. of Labor v. Reynolds,* Del.Supr., 669 A.2d 90, 92 (1995). In effect, this Court must determine whether the Court of Chancery was correct in the formulation of the legal principles underlying this dispute. *Delaware Alcoholic Beverage Wholesalers, Inc. v. Ayers,* Del.Supr., 504 A.2d 1077, 1082 (1986).

 The Union contends that the subject matter of its complaint to the PERB is a violation of the collective bargaining agreement, not a Merit Rule violation. The Union argues that the Department's failure to abide by a binding ruling emanating from Step 4 of the grievance procedure means that the Department has violated a contractual term of the collective bargaining agreement. As a result, it is contended, the Union's complaint properly can be heard by the PERB under 19 *Del.C.* §§ 1302(d), (q), and 19 *Del.C.* § 1301(3).

The Department, disagrees with the Union's characterization of the subject matter of the complaint which, in turn, has become the subject of this appeal. The Union's actual complaint, it is argued, is that the Department has neglected to implement the Head Decision which granted Hector and Scott an opportunity to obtain the college degree necessary for the newly classified Specialist position. The dispute thus involves job classifications, a grievance that falls within the purview of the MERB and not the PERB.

A resolution of this dispute requires the application of statutory law which defines the obligation of State agencies that have entered into collective bargaining agreements with State employees who are also subject to the Merit Rules. The provisions in question are intended to be complementary but are also somewhat complex. 19 *Del.C.* § 1302(d) defines "Collective Bargaining" as "the performance of the mutual obligation of a public employer through its designated representatives and the exclusive bargaining representative to confer and negotiate in good faith with respect to terms and conditions of employment...." "Terms and Conditions of Employment" is defined under 19 *Del.C.* § 1302(q) as "matters concerning or related to wages, salaries, hours, grievance procedures and working conditions; provided however, that some terms shall not include those matters determined by this chapter or any other law of the State to be within the exclusive prerogative of the public employer." Finally, 19 *Del.C.* § 1307(a)(5) provides that it is an unfair labor practice to "[r]efuse to bargain collectively in good faith with an employee representative which is the exclusive representative of employees in an appropriate unit, except with respect to a discretionary subject," which is defined in 19 *Del.C.* § 1302(g) as any subject covered by the Merit Rules.

In this case, the Union exhausted the grievance procedure contained in the collective bargaining agreement through Step 4, as required by Article 7.1 of the collective bargaining agreement. The successful result secured by the Union should have ended the matter since the Department was precluded

by the Governor's Executive Order from further appeal. When the Department refused to honor the result of the grievance process the Union was authorized to seek enforcement through the PERB.

The PERB ruling that it had no jurisdiction because the Head ruling involved a reclassification, in effect, permitted the Department to secure a review of the merits of the grievance ruling beyond the Step 4 level, contrary to the Executive Order. The ruling also effectively denied Scott and Hector the implementation of the ruling they achieved through pursuit of the grievance which was an integrated part of the collective bargaining agreement. The Head decision represented the final determination of a classification grievance and, despite its inconsistency with the previous ruling in *Bassett,* was binding on the Department.

Contrary to the decision of the Court of Chancery, Merit Rule 20.0340 does not control here. That rule provides that "[i]f either party does not accept the findings of the Director [or his/her designee] [at Step 4] either party may present a written appeal to the Personnel Commission." Here, however, the Union accepted the findings of the Director at Step 4, obviating the need to pursue further appeal. Once successful at Step 4, the Union's grievance is no longer based on the original classification dispute, but on the failure of the Department to comply with the result of the grievance procedure—a violation of the collective bargaining agreement within the jurisdiction of PERB.

The Department defends its action in failing to implement the Head decision as a good faith effort to resolve the inconsistency with the *Bassett* decision. The two grievances, however, are separate rulings by duly constituted hearing officers. Their ultimate inconsistency results from the application of the Executive Order—a self-imposed limitation on the exercise of the State's options under the grievance process. Parties to a collective bargaining agreement are bound by the results for which they bargain. Moreover, a public-employee who agrees to the submission of unsettled labor disputes to a statutory mechanism authorized by 19 *Del.C.* Ch. 13, is entitled to the benefit of the grievance process. *City of Wilmington v. General Teamsters Local Union 326,* Del.Supr., 321 A.2d 123, 127 n. 10 (1974).

In sum, we conclude that the failure of the Department to enforce the Head decision constituted an unfair labor practice for which the Union may seek enforcement before the PERB. The Court of Chancery's ruling to the contrary is, accordingly, REVERSED.