DELAWARE STATE UNIVERSITY CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, Appellee Below, Appellant,

v.

DELAWARE STATE UNIVERSITY, Appellant Below, Appellee.

No. 119,2002.

Supreme Court of Delaware.

Submitted: Sept. 24, 2002.
Decided: Jan. 7, 2003.

---

**42.** Supr. Ct. R. 4(f).

Perry F. Goldlust, Heiman, Aber, Goldlust & Baker, Wilmington; Jonathan G. Axelrod (argued), Beins, Axelrod & Craft, P.C., Washington, D.C., for appellant.

Noel E. Primos (argued), Schmittinger and Rodriguez, P.A., Dover, for appellee.

Before VEASEY, Chief Justice, WALSH and STEELE, Justices.

STEELE, Justice:

The American Association of University Professors has appealed the Court of Chancery's reversal of the State of Delaware Public Employee Relations Board's finding that Delaware State University committed an Unfair Labor Practice under 19 *Del. C.* § 1307(a)(5) of Delaware's Public Employer Relations Act. At issue is whether the Court of Chancery erred as a matter of law by concluding that PERB should defer to the grievance and arbitration procedures pursuant to Article 14.4.6 of the parties' collective bargaining agreement where those provisions impact statutorily protected rights under the PERA.

We agree with the ultimate conclusion reached by the Court of Chancery that PERB's ULP order should be vacated and we therefore affirm.

## I.

AAUP filed a grievance on behalf of Jane Buck, now a retired DSU Professor. In April of 1995, Buck complained to the union that DSU unfairly determined her salary for the 1993–1994 school year. DSU sets salaries through a Merit Compensation Program where professors are provided a base salary and may receive an additional bonus based on teaching performance, research, achievement in the professor's specific discipline, or other "extraordinary service" to the University.[1] Buck claimed DSU wrongfully withheld a Merit Compensation Award because of her leadership role in the union.

AAUP filed a grievance alleging that DSU violated the parties' collective bargaining agreement by denying Buck additional merit pay. AAUP also requested access to "merit applications and supporting documentation of all unit members this year, and copies of all the recommendations for merit forwarded by each of the Chairs and each of the Deans."[2] DSU refused to disclose the information, claiming that AAUP's request constituted a search for a grievance rather than an investigation of a legitimate claim. DSU asked AAUP to refile a "proper request" within seven days.[3] DSU later requested that AAUP narrow the scope of the requests. By August 1995, DSU and Buck, then AAUP President, had engaged in several rounds of correspondence over the scope of disclosure.

AAUP pursued the information request through two separate avenues: the duty to bargain in good faith pursuant to Section 1307(a)(5) of the PERA[4] and under article 14.4.6 of the CBA, which requires DSU to disclose "[a]ny information pertaining to the grievance in the official file in the possession of [DSU] needed by the grievant or the Association on behalf of the grievant [both] to investigate and process a grievance" within seven working days of

---

1. Appendix to Appellant's Opening Brief at 160 (CBA § 17.12.2.).

2. Appendix to Appellant's Opening Brief at 324 (Memorandum from AAUP to DSU dated April 24, 1995).

3. *Id.*

4. 19 *Del C.* § 1307(a)(5).

the request. DSU claimed it had no obligation to provide the salary information as a "general statutory duty to bargain in good faith under § 1307." AAUP then filed an unfair labor practice charge against DSU pursuant to § 1307(a)(5) with PERB on October 5, 1995. AAUP also proceeded with arbitration of the underlying grievance through the CBA. The parties scheduled an arbitration hearing for September 26, 1996.

Long before any progress on the unfair labor practice allegation before the PERB, AAUP actually received the documents through its participation in the arbitration. On September 18, 1996, AAUP persuaded the arbitrator to issue a *subpoena duces tecum* for the documents. After reviewing the merit awards granted to other faculty members during the 1993–1994 academic year and holding a hearing on the issue, the arbitrator denied Buck's pay grievance on March 5, 1997.

Although the merits of the underlying grievance had been decided, AAUP continued to pursue the ULP allegation charge with PERB. DSU argued that it was not a "public employer" within the meaning of the PERA and therefore, PERB did not have jurisdiction to hear the charge. In the alternative, DSU argued that even if PERB had jurisdiction, it should defer to the arbitrator's decision since the CBA provided a mechanism for discovery of information and the arbitrator timely heard and resolved the issue when it arose under the terms of the CBA.

On November 18, 1997—over two years after AAUP filed the ULP allegation and over a year after DSU had produced the information at issue—the PERB Hearing Officer rejected DSU's arguments. Almost three months later, on February 5, 1998, PERB affirmed the Hearing Officer's decision and ruled that DSU was a "public employer" and subject to the provisions of PERA. PERB also found that DSU had committed an unfair labor practice under § 1307 when it denied AAUP's request for the merit salary information. Relying upon federal precedent interpreting the analog to § 1307 in the National Labor Relations Act, PERB concluded that the normal policy favoring deferral to arbitration for CBA disputes does not apply when the charge deals with producing information that permits a Union to evaluate the merits of a possible claim before filing a grievance.

DSU appealed PERB's decision to the Court of Chancery. The Vice Chancellor upheld PERB's determination that DSU was a "public employer" subject to PERA, but found that PERB did not provide a sufficient basis to conclude that Delaware labor law must or should follow federal precedent by creating a discovery exception to the strong preference for deferring to arbitration. The Vice Chancellor remanded the case to PERB to analyze the deferral issue using the only Delaware precedent concerning deference to arbitration, *City of Wilmington v. Wilmington Firefighters Local 1590.*[5] If PERB continued to believe that deferral was inappropriate and returned to the merits of AAUP's charge against DSU, the Vice Chancellor cautioned the Board to consider DSU's confidentiality concerns in protecting the salary information of other employees before the Board determined that DSU had committed an unfair labor practice.

On remand, PERB held fast to its initial findings. PERB again cited federal precedent and refused to defer to the arbitrator's ability to resolve the discovery dispute effectively, efficiently, and in a timely

5. 385 A.2d 720 (Del.1978).

fashion. Turning to the merits of DSU's refusal to turn over other employee records voluntarily, PERB cited federal case law stating that salary information is *per se* relevant in discovery proceedings and, thus, DSU's confidentiality concerns were not persuasive and could not overcome a presumption that DSU should have turned over the salary information.

DSU again appealed the decision to the Court of Chancery. The Vice Chancellor concluded that in accordance with the *City of Wilmington* case, PERB again erred as a matter of law. The Vice Chancellor interpreted PERA to require PERB to defer to the outcome of the arbitration proceeding and that an unfair labor practice under § 1307 was not cognizable since the parties provided for the terms of discovery in their CBA. AAUP appeals that decision to this Court.

## II.

AAUP argues that the Court of Chancery failed to recognize an exception to the general policy favoring deferral to arbitration in collective bargaining disputes. According to AAUP, deference to arbitration is not appropriate when the dispute involves access to information that would allow a union to decide whether or not to proceed with a grievance before any grievance is actually filed.

This exception from deferral stems from the 1967 case of *NLRB v. Acme Industrial Co.*, in which the United States Supreme Court rejected the employer's contention that the NLRB must "await an arbitrator's

determination of the relevancy of the requested information before it can enforce the union's statutory rights [to information] under § 8(a)(5) [of the NLRA]." [6] The *Acme* Court was not persuaded that the "arbitrator's greater institutional competency" required deferral and approved of the Board acting only "upon the probability that the desired information [is] relevant, and that it would be of use to the union in carrying out its duties and responsibilities." [7] Rather than "threaten[ing] the power which the parties have given the arbitrator to make binding interpretations of the labor agreement[,]" the Court found that the NLRB's assertion "was in aid of the arbitral process." [8]

We have only addressed the relationship between a statutorily based action and arbitration on one earlier occasion. In *City of Wilmington v. Wilmington Firefighters Local 1590*, we adopted the federal "pre-arbitral deferral policy" under which the NLRB "refrain[s] from exercising jurisdiction in respect of disputed conduct arguably both an unfair labor practice and a contract violation when ... the parties have voluntarily established by contract a binding settlement procedure." [9] The reason for deferring "to the contractually agreed-upon arbitration procedures when the issue is a refusal-to-bargain" is to require parties "to honor their contractual obligations rather than, by casting [a] dispute in statutory terms, to ignore their agreed-upon procedures." [10]

We decided *City of Wilmington* under PERA's predecessor statute. Although

6. *National Labor Relations Board v. Acme Industrial Co.*, 385 U.S. 432, 436, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967).

7. *Acme*, 385 U.S. at 436–37, 87 S.Ct. 565 (citation omitted).

8. *Acme*, 385 U.S. at 438, 87 S.Ct. 565.

9. *City of Wilmington*, 385 A.2d at 723 (quoting *William E. Arnold Co., v. Carpenters District Council*, 417 U.S. 12, 16, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974)).

10. *Id.* (quoting *Arnold*, 417 U.S. at 16, 94 S.Ct. 2069)(*quoting Collyer Insulated Wire*, 192 NLRB 837, 842–43 (1971)).

we embraced the practice of deferring to "contractually agreed-upon arbitration procedures when the issue is a refusal-to-bargain," we further explained that the statutory decision maker (at that time the Court of Chancery, and now the PERB) may "consider an application for additional relief on a showing that either (1) *the dispute has not been resolved or submitted to arbitration with reasonable promptness,* or (2) the arbitration procedures have been unfair or have rendered a result repugnant to the Act." [11] [emphasis added]

The Vice Chancellor recognized that federal case law carves out an exception from the general policy of deferring to contractual grievance procedures in the case of requests for information but also noted that the Delaware courts had yet to embrace the exception as the law of our state. The Vice Chancellor concluded that *Acme* appeared to adopt a dated view of the world. In particular, "the approach failed to consider how far arbitration practice has evolved, particularly with respect to its easier access to discovery." Moreover, the Vice Chancellor determined that even under the NLRA, it was unclear that deferral was inappropriate in this case, when the CBA contains a provision that explicitly addresses the production of the grievance-relevant information. Thus, the Vice Chancellor held that in accordance with *City of Wilmington,* the PERB erred as a matter of law:

When a collective bargaining agreement includes a specific provision addressing a union's entitlement to information relevant to the investigation and processing of a grievance, that specific contractual provision should be deployed in the first instance by the union. Although there may be circumstances when the instrumental right to information recognized under § 1307(a)(5) should be vindicated by the PERB even when such a contractual provision exists, in the normal course the PERB should defer to the resolution of information disputes by the contractual dispute resolution process. Such a deferral rule best implements the PERA's mandate that the parties themselves negotiate dispute resolution mechanisms.

## III.

▪ The Court of Chancery's construction of Delaware statutory law on stipulated facts is subject to a *de novo* review. In effect, this Court must resolve whether the Court of Chancery correctly formulated the legal principles involved in the dispute.[12]

▪ A union can waive the rights provided under the National Labor Relations Act, including the right to access to information,[13] so long as the waiver is "clear and unmistakable." [14] In *DaimlerChrysler* and *General Dynamics,* the reviewing authority evaluated contracts where the right to information was provided for in either Step 1 or Step 2 of the grievance [15] and

11. *City of Wilmington,* (citing *Collyer,* 192 NLRB at 837).

12. *AFSCME Council 81, Local 2004 v. State of Delaware, Department of Services for Children, Youth and Their Families,* 696 A.2d 387, 389 (Del.1997).

13. *DaimlerChrysler Corp., v. NLRB,* 288 F.3d 434, 445 (D.C.Cir.2002).

14. *Id.* (quoting *Metropolitan v. Edison v. NLRB,* 460 U.S. 693, 708, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983)).

15. Collective bargaining agreements divide grievances into various "steps." Step 1 usually refers to the filing of the grievance, and each additional step provides a higher level of review by different administrative bodies. The final step is typically a hearing before the American Arbitration Association.

management argued that the right to information in this later stage of the grievance process amounted to an implicit waiver of any right to information at any point earlier in the grievance process, particularly when the union is deciding to pursue a grievance.[16] The NLRB refused to import into the contract a waiver of a stage of discovery which the collective bargain agreement did not cover.[17]

Unlike the contract provisions of *DaimlerChrysler* and *General Dynamics,* the terms of the CBA in the present case specifically cover AAUP's right to discovery at *every stage* of the grievance process. Article 14.4.6 of the CBA provides:

> Any information pertaining to the grievance in the official file in the possession of the University needed by the grievant or the Association on behalf of the grievant *to investigate and process a grievance* shall be provided to the grievant or Association on request within seven (7) working days, at the cost of the grievant. [emphasis added]

Article 14.4.6 clearly contemplates an agreement between the parties to produce discovery related both to the grievant's need "to investigate" as well as to "process" a grievance. Article 14.4.6 constitutes the parties' decision to specify the procedures through which the information ought to be obtained. AAUP voluntarily agreed that the ·CBA should include a clause addressing resolution of discovery disputes which provided a clear seven day time table in which DSU must provide the information an arbitrator deems relevant to investigate or process a grievance. AAUP, therefore, waived its § 1307(a)(5)'s ULP complaint process as a. tool for re-

solving discovery disputes over grievances. AAUP's rather tortured construction of the terms "investigate" and "process" which suggests a grievance had not been filed appears altogether contrived. Investigation of a grievance should fairly be interpreted to cover prefiling or actions contemporaneous with filing and processing should be construed to include filing and post-filing actions. No other construction gives full meaning to a distinction between the words. One could imagine a process where no grievance could be formulated and filed without the information sought. Of course, if the arbitration procedures have been unfair or have rendered a result repugnant to the PERA, PERB could have considered an application for additional relief. However, neither party asserts that argument here (no doubt because PERB's slothful approach to resolving a dispute hardly inspires confidence that its processes are preferable to those of arbitration) and therefore, we need not address it.

Arbitration resolved the underlying dispute over discovery and the information sought (by then inarguably for processing the grievance) was produced in seven days and the merits · concerning Professor Buck's grievance resolved seventeen months before the PERB rendered a decision on the ULP allegation. The arbitration process fully vindicated AAUP's request for salary information under the terms of its contract with DSU. The arbitration process quickly and smoothly demonstrated its effectiveness relative to the clanking wheels of the arguable statutory alternative. As the Vice Chancellor noted,

---

**16.** *DaimlerChrysler,* 288 F.3d at 447; *General Dynamics,* 270 ·N.L.R.B. at 829–30.

**17.** *See DaimlerChrysler* 288 F.3d at 447 (management "did not mount a serious argument

that the parties' CBA in this case contained a clear and unmistakable waiver of the Union's right to receive information at any state of the grievance procedure").

PERB should, therefore, have "stayed its hand." [18]

We question the Vice Chancellor's careful and thoughtful analysis only to the extent that he may have suggested that Delaware Courts should reject the federal law exception to the supposed general policy favoring deferral to arbitration in collective bargaining disputes when the dispute involves access to information that would allow a union to decide whether or not to proceed with a grievance before a grievance is actually filed. We say that only to the extent one might interpret his comments in *dicta* to be sweeping in scope. Certainly his holding applies appropriately to the facts of this case where both parties expressly agreed in their CBA to provide for a seven day turn around to investigate a grievance as well as to process it and to have, by implication, any dispute arising from a refusal to produce allegedly relevant information decided by an arbitrator. The trade off in delay and cost by proceeding with a statutorily based demand alleging an ULP on the theory that information is needed after a grievance has been filed, as here, is more than offset by the effectiveness of the arbitration process.

The PERB erred as a matter of law when it concluded that DSU committed a ULP. Two factors lead us to this result. First, DSU and AAUP agreed to language in their CBA specifically providing for a dispute resolution process over discovery issues at every stage of the grievance pro-cess. Second, arbitration had long resolved the underlying dispute by the time the PERB purported to resolve the dispute within the context of an ULP allegation. Because of these two factors, PERB should have deferred to arbitration.

■ We conclude the Vice Chancellor correctly vacated the PERB's ruling and could have done so without addressing whether the *Acme* exception should be the law in Delaware. We note that this decision is a narrow holding confined to the facts of this case. A factual scenario might conceivably arise where the CBA language is, in fact, less clear or the need for information before filing a grievance prevents filing a grievance first before requesting information to investigate or process the grievance. This case does not fall into that exceptional category. When a CBA specifically addresses the mechanisms of resolving a specific dispute and that dispute has long been settled, there is no utility to nor an advancement of sound public policy by having PERB review the underlying circumstances in the context of an ULP. Accordingly, we affirm the decision of the Court of Chancery.

---

18. *Delaware State University v. Delaware State University Chapter of the American Association* *of University Professors,* Del. Ch. C.A. No. 1389–k, 2002 WL 385350 (Feb. 26, 2002).