**DIVISION 1205, AMALGAMATED TRANSIT UNION, AFL–CIO**

v.

**GREYHOUND LINES, INC.**
**Civ. A. No. 70–1511–W.**

United States District Court,
D. Massachusetts.

March 2, 1971.

Greyhound Lines, Inc. (hereafter called "the company") and National Council of Greyhound Divisions (hereafter called "the council") a labor organization made up of 23 local divisions, one of which is Division 1205, Amalgamated Transit Union, AFL–CIO (hereafter called "the union") entered into a collective bargaining contract for the period November 1, 1968 through October 31, 1971.

Section 1, Article 3 of that contract establishes a grievance procedure for "all differences, disputes, suspensions, discipline cases and discharge cases hereinafter collectively referred to as 'Grievances'." The procedure requires presentation of a grievance to the supervisor, then, failing satisfactory disposition, to the regional manager, then, failing satisfactory disposition, to the president. If there has been no satisfactory adjustment by those steps internal to the company, the union is authorized by Section 1, Article 3(e) to "submit the issue * * * for final determination by a Board of Arbitration."

The company discharged two union members, Cubberlay and Tardiff, in August 1970.

The union presented through each of the steps of the grievance procedure a grievance with respect to each of those discharges. At each step the company's representative, for the reasons stated in the following paragraphs, took the position that the matter was not within the coverage of the grievance procedure.

Each of the employees was covered by the Greyhound Retirement and Disability Plan. Under the written terms of that plan when an employee with more than five years of service is terminated he has an option either (1) to withdraw his contributions to the fund created pursuant to the plan or (2) leave them with the trustees. One half of the trustees are appointed by the company; the other half by the Council. In 1967 the trustees unanimously adopted as part of the rules and regulations, of the plan form 4(a). That form, to be exe-

Arthur J. Flamm, Segal & Flamm, Boston, Mass., for plaintiffs.

John F. Drum, Boston, Mass., Marvin Dicker, Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant.

## OPINION

WYZANSKI, Chief Judge.

This is an action under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) in which a union prays that a company be ordered to submit to arbitration two grievances alleged to fall within the scope of the arbitration provisions of a collective bargaining agreement. Plaintiff and defendant have each filed motions for summary judgment.

cuted by a terminating employee when he elects the first option, that is, to withdraw his contributions, states that "This will serve as my notice and acknowledgement that my employment by my employer has been terminated. I understand in signing this notice I am waiving all rights to contest termination of employment under any grievance procedures." According to the company (but not according to the union) "it was understood and intended to limit Article 3 of the collective bargaining agreement by precluding an employee from invoking the grievance and arbitration procedure once he has executed that form." [Nichols' affidavit, par. 11]. Cubberlay and Tardiff each exercised an option to withdraw his contributions to the plan and executed form 4(a).

The union, taking the position that the grievances of Cubberlay and Tardiff had not been satisfactorily adjusted, requested that the dispute be submitted to arbitration. The company refused on the ground that in each case "the resignation of this employee is not a subject for grievance or arbitration procedure."

Upon the basis of the foregoing facts, the court concludes that the union is entitled to an order compelling the company to submit to arbitration the issues whether there has been a waiver with respect to Cubberlay's and Tardiff's rights to contest their terminations of employment under any grievance procedure; and if not, whether their terminations were proper.

■ Of course, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–584, 80 S.Ct. 1347, 4 L.Ed.2d 1409. But an arbitration agreement should be broadly interpreted, doubts should be resolved in favor of coverage, and an order to arbitrate a "particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Ibid.*

■ In their collective bargaining contract the company and the union expressly agreed to have the grievance procedure and the arbitration cover "all discharge cases." It may be said with positive assurance that the contract covers arbitration of not only the merits of a discharge but also alleged waivers of objections to the discharge. The defense of waiver of a right to present a claim is one of the most common matters arising in the arbitration of claims. See Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625 (2nd Cir.).

There is no merit in the company's contention that by agreement of the company and the union there was excluded from the jurisdiction of the arbitrator any discharge claim made by or on behalf of an employee who had executed form 4(a).

First, even if the affidavits submitted by the company, including in particular the Nichols affidavit, be taken as incontestable, there is no showing that persons with authority to represent the union in modifying the collective bargaining contract had any negotiations with, or reached any oral or written understanding or agreement with, representatives of the company to change the terms of that collective bargaining contract.

Second, there is no showing that the trustees administering the fund purported to change the terms of the collective bargaining contract.

Third, on the view of the affidavits most favorable to the company, all that is shown is that the trustees agreed that an employee who executed form 4(a) should waive his rights to contest the termination of his employment under any grievance or arbitration procedure, and that the employees here involved executed such a form. The normal interpretation of the supposed agreement of the trustees and the normal interpretation of form 4(a) is that if an employee validly executed form 4(a) the company had a substantive defense to the em-

ployee's claim, not an objection to the jurisdiction of an arbitrator. The normal interpretation is that the arbitrator is to determine (1) whether the company had proved the execution of such a waiver, and (2) if so, whether the union or employee had proved that the waiver had been induced by the company's fraud, coercion or the like.

Finally, if it could be said that the issues with respect to the waiver are not substantive issues but procedural issues they would be appropriate matters to be determined by the arbitrators. John Wiley & Sons v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898.

In ordering the company to submit to arbitration the discharge cases of Cubberlay and Tardiff, this court leaves open to the arbitrators the power to consider as the first issue for their decision whether those employees had waived their rights to have their discharge cases handled by the grievance procedure and by arbitration. Even though the waiver issues be regarded as a matter of defense, to decide them before the presumably more complicated and contentious issues with respect to the merits of the discharges may promote the interests of justice, the convenience of the parties, and the avoidance of unnecessary expense.

Plaintiff's motion for summary judgment granted; defendant's motion for summary judgment denied.

## JUDGMENT

Upon the basis of the opinion filed this day, plaintiff's motion for summary judgment is granted, defendant's motion for summary judgment is denied, and Greyhound Lines, Inc. is ordered to submit to arbitration in accordance with Section 1, Article 3 of the collective bargaining contract, effective November 1, 1968, between Greyhound Lines, Inc. and National Council of Greyhound Divisions, the issues whether there has been a waiver with respect to Cubberlay's and Tardiff's rights to contest their terminations of employment under any grievance procedure; and if not, whether their terminations were proper.