In the Matter of Arbitration Between

**PETTINARO CONSTRUCTION CO., INC., a Delaware Corporation, Plaintiff,**

v.

**HARRY C. PARTRIDGE, JR., & SONS, INC., a New York Corporation, Defendant.**

Court of Chancery of Delaware, New Castle County.

Submitted Aug. 17, 1979.

Decided Oct. 15, 1979.

958

David Roeberg, Roeberg & Associates, P. A., Wilmington, for plaintiff (complainant).

John Biggs, III, Biggs & Battaglia, Wilmington, for defendant (respondent).

HARTNETT, Vice Chancellor.

This action was commenced to compel arbitration. For the reasons set forth, I find that the plaintiff's claim is not ripe, at this time, for an Order compelling arbitration.

The Pettinaro Construction Co., Inc. (Pettinaro), and the defendant, Harry C. Partridge, Jr., and Sons, Inc., a subcontractor of plaintiff, entered into a contract incorporating by reference the arbitration provisions of a general contract then existing between Pettinaro and the State of Delaware for the construction of certain juvenile detention facilities. After completion of the work called for in the subcontract, defendant presented Pettinaro with a bill, only a portion of which Pettinaro admitted owing.

In June 1978, nine months after the dispute originally arose, Pettinaro submitted the dispute to the Architect on the project. Defendant refused to participate in the proceedings before the Architect, contending that submission of this matter to him was not the proper method for commencing the contractual arbitration process. As a result of defendant's refusal to participate, the Architect concluded that a legal issue was involved precluding him from acting on the dispute. He therefore refused, in writing, to hold a hearing or entertain the submission of any evidence until such time as Pettinaro and defendant resolved their dispute concerning the proper forum for arbitration.

Pettinaro then filed this action pursuant to 10 *Del.C.*, Ch. 57, which purports to be the Uniform Arbitration Act. Pettinaro seeks an order compelling defendant to arbitrate and for a determination of the proper contractual procedure for initiating the arbitration process. After inconclusive discovery demands, defendant filed this Motion For Summary Judgment raising three primary issues: (1) failure of Pettinaro to comply with 10 *Del.C.* § 5703(c), (2) failure of Pettinaro to comply with the arbitration procedure set out in the contract, and (3) Pettinaro's waiver of a right to arbitration by delay.

The Delaware General Assembly, in adopting the Uniform Arbitration Act, made several inexplicable changes, some of which have led to ambiguities. The entire section 5703 is peculiar to Delaware and the language of § 5703(a) and (c) are hopelessly inconsistent. In deciding defendant's motion for summary judgment, however, only the provisions of 10 *Del.C.* § 5703(a) need be considered.

I

The material provisions of the agreement between the parties provide:

*Subcontract*:

24. In case of dispute in regard to any articles of this Agreement, if arbitration is provided for in the General Contract between the Owner and Contractor, same shall apply with equal force to this Agreement. In the event that no arbitration is provided in the Contract between Contractor and Owner, then the decision of the Architect or Engineer shall be final in case of any dispute between Contractor and Subcontractor arising out of this Agreement.

Everything required of the Contractor in this connection is applicable to the Subcontractor.

*General Contract*:

2.2.7 Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for decision which he will render in writing within a reasonable time.

2.2.8 All interpretations and decisions of the Architect shall be consistent with the intent of the Contract Documents. In his capacity as interpreter and judge, he will exercise his best efforts to insure faithful performance by both the Owner and the Contractor and will not show partiality to either.

2.2.9 The Architect's decisions in matters relating to artistic effect will be final if consistent with the intent of the Contract Documents.

2.2.10 Any claim, dispute or other matter that has been referred to the Architect, except those relating to artistic effect as provided in Subparagraph 2.2.9 and except any which have been waived by the making or acceptance of final payment as provided in Subparagraphs 9.7.5 and 9.7.6, shall be subject to arbitration upon the written demand of either party. However, no demand for arbitration of any such claim, dispute or other matter may be made until the earlier of:

2.2.10.1 The date on which the Architect has rendered his written decision, or

.2 the tenth day after the parties have presented their evidence to the Architect or have been given a reasonable opportunity to do so, if the Architect has not rendered his written decision by that date.

2.2.11 If a decision of the Architect is made in writing and states that it is final but subject to appeal, no demand for arbitration of a claim, dispute or other matter covered by such decision may be made later than thirty days after the date on which the party making the demand received the decision. The failure to demand arbitration within said thirty days' period will result in the Architect's decision becoming final and binding upon the Owner and the Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but will not supersede any arbitration proceedings unless the decision is acceptable to the parties concerned.

7.10 *Arbitration*

7.10 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

7.10.2 Notice of the demand for arbitration shall be filed in writing with the other party to the contract and with the American Arbitration Association, and a copy shall be filed with the Architect. The demand for arbitration shall be made within the time limits specified in Subparagraphs 2.2.10 and 2.2.11 where applicable, and in all cases within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

*Construction Industry Arbitration Rules*:

Section 7. INITIATION UNDER AN ARBITRATION PROVISION IN A CONTRACT—Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

The initiating party shall, within the time specified by the contract, if any, file with the other party a notice of an intention to arbitrate (Demand), which notice shall contain a statement setting forth the nature of the dispute, the amount involved, if any, and the remedy sought; and shall file two copies of said notice with any Regional Office of the AAA, together with two copies of the arbitration provisions of the contract and the appropriate filing fee as provided in Section 48 hereunder.

The AAA shall give notice of such filing to the other party. A party upon whom the demand for arbitration is made may file an answering statement in duplicate with the AAA within seven days after notice from the AAA, simultaneously sending a copy to the other party. If a monetary claim is made in the answer the appropriate administrative fee provided in the Fee Schedule shall be forwarded to the AAA with the answer. If no answer is filed within the stated time, it will be treated as a denial of the claim. Failure to file an answer shall not operate to delay the arbitration.

These provisions are taken from forms published by the American Institute of Architects for general industry wide use in the formulation of construction contracts. One of the primary purposes in the publication of such forms is to ensure a uniformity of interpretation giving the parties to such a contract some assurance of how the document may be construed in future substantive disputes. It is therefore especially appropriate for this Court to look to the interpretation of these documents by other courts.

## II

■ At common law executory agreements to arbitrate were revocable by either party so long as no award had been entered on the agreement, and specific performance of such an agreement could not be ordered. *Electrical Research Products v. Vitaphone Corp.*, Del.Supr., 20 Del.Ch. 417, 171 A. 738, 748 (1934); *Pullman, Inc. v. Phoenix Steel Corp.*, Del.Super., 304 A.2d 334, 338 (1973); *Fooks v. Lawson*, Del.Super., 1 Marv. 115, 15 Del. 115, 40 A. 661, 663 (1893). This rule was adopted because the courts refused to allow their jurisdiction to be ousted by contract, and not because of any innate distrust of arbitrators or the arbitration process. *Randel v. Ches. & Del. Canal Corp.*, Del.Supr., 1 Har. 233, 1 Del. 233, 275–276 (1833).

Judicial policy regarding the enforceability of executory agreements to arbitrate entered a state of flux during this century, resulting in a conflict of Delaware authority on the issue. See *Western Air Lines, Inc. v. Allegheny Airlines, Inc.*, Del.Ch., 313 A.2d 145, 155 (1973). This conflict, with respect to agreements such as the present one, was resolved by the Delaware General Assembly in 1972 by its adoption of the Uniform Arbitration Act promulgated by the National Conference of Commissioners on Uniform State Laws. 10 *Del.C.*, Ch. 57. This Uniform Act has been adopted by twenty-two jurisdictions.

■ The Uniform Arbitration Act reflects a policy designed to discourage litigation, to permit parties to resolve their disputes in a specialized forum more likely to be conversant with the needs of the parties and the customs and usages of a specific industry than a court of general legal or equitable jurisdiction, and to provide for the speedy resolution of disputes in order that work may be completed without undue delay. See *City of Wilmington v. Wilmington Firefighters*, Del.Supr., 385 A.2d 720, 724 (1978). Accordingly, the public policy of this State is now to enforce agreements to arbitrate without regard to the justiciability of the underlying claims. 10 *Del.C.* § 5701. It is no longer of any consequence that a court, otherwise competent to hear the dispute, is ousted of its jurisdiction by the arbitration process.

■ In order to facilitate the policy it represents, the Act provides for actions to compel arbitration according to the tenor of the arbitration agreement, and to stay judicial proceedings pending arbitration. 10 *Del.C.* § 5703. An order compelling arbitration is in fact an order for specific performance, the duty to arbitrate arising from, and being governed by, the contract creating it. By applying the principle of contract law, it is clear that the only issues before the Court in an action to compel arbitration are: whether an agreement to arbitrate exists; whether the defendant has a duty to arbitrate under the agreement; and whether he has breached his duty. See *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, Md.Ct.Sp.App., 21 Md. App. 307, 320 A.2d 558, rev'd. on other grounds, Md.App., 274 Md. 307, 334 A.2d 526 (1975), Uniform Laws Annotated: *Uniform Arbitration Act* § 2 n. 13, 14; 6 C.J.S. Arbitration § 43.

### III

The parties agree that the contract between them, taken as a whole, constitutes an agreement to arbitrate the dispute concerning the amount owing by Pettinaro to defendant. The parties, however, disagree on the manner by which arbitration is to be initiated. Pettinaro claims that the contract sets out a three-step arbitration process requiring first a submission of the dispute to the Architect, then a decision by the Architect or a refusal by him to decide the issue, and finally a demand for arbitration under Paragraph 7.10 of the Contract. Thus, Pettinaro concludes that it is unable to have this controversy arbitrated because of defendant's refusal to submit to the Architect's jurisdiction and the Architect's subsequent refusal to act. Pettinaro therefore seeks to compel defendant to submit its evidence to the Architect.

Defendant counters that arbitration can be initiated only under Paragraph 7.10 of the General Contract; that Pettinaro has not initiated arbitration; and that therefore Pettinaro is not an "aggrieved party" under 10 *Del.C.* § 5703(a). 10 *Del.C.* § 5703(a) states:

(a) *Proceeding to compel arbitration.*—A party aggrieved by the failure of another to arbitrate may file a complaint for an order compelling arbitration. Where there is no substantial question whether a valid agreement to arbitrate in this State was made or complied with, and the claim sought to be arbitrated is not barred by limitation under § 5702(c), the Court shall order the parties to proceed with arbitration. Where any such question is raised it shall be tried forthwith in said Court. If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in the Court of Chancery in the State the application shall be made therein. If the application is granted, the order shall operate to stay the pending or any subsequent action, or so much of it as is referable to arbitration. Any action or proceeding in any other court of the State, involving an issue subject to arbitration, shall be stayed if an order for arbitration or a complaint or an application therefor has been made in the Court of Chancery under this chapter or, if the issue is severable, the stay may be with respect thereto only.

Although defendant does not so characterize it, its position amounts to an argument that the dispute between the parties is not yet ripe for judicial resolution.

The matter before me on this motion for summary judgment is therefore whether Pettinaro is an aggrieved party under 10 *Del.C.* § 5703(a) because of defendant's refusal to participate in a hearing before the Architect. In order to decide this question, I must determine the scope of the arbitration agreement and whether Pettinaro has exhausted all the remedies it may have under the agreement.

### IV

■ Where it is reasonable to construe a contract as requiring arbitration, Courts will do so in view of the public policy encouraging arbitration. *United Steelworkers of America v. Warrior & Gulf Naviga-*

*tion Co.*, 363 U.S. 574, 582–84, 80 S.Ct. 1347, 1352–1354, 4 L.Ed.2d 1409, 1417–1418 (1959); *Div. 1205, Amalgamated Transit Union v. Greyhound Lines, Inc.*, D.Mass., 323 F.Supp. 219, 221 (1971); *University of Alaska v. Modern Const., Inc.*, Alaska Supr., 522 P.2d 1132, 1138 (1974); *McCandliss v. Ward W. Ross, Inc.*, Mich.App., 45 Mich. App. 342, 206 N.W.2d 455, 457 (1973). Indeed, where ambiguities relating to the issue of arbitrability exist, the question of arbitrability itself may be submitted to the arbitrators. *Butler Products Co. v. Unistrut Corp.*, 7th Cir., 367 F.2d 733, 736 (1966); *Alco Standard Corp. v. Benalal*, E.D.Pa., 345 F.Supp. 14, 22 (1972); *Atcas v. Credit Clearing Corp. of America*, Minn.Supr., 292 Minn. 334, 197 N.W.2d 448, 452 (1972). Since arbitration is a contractual matter, however, a party cannot be required to submit to arbitration absent a contractual duty to do so, and the Court is not permitted to rewrite the agreement to provide for the arbitrability of subject matter not otherwise covered. *Butler Products Co. v. Unistrut Corp.*, supra; *Div. 1205, Amalgamated Transit Union v. Greyhound Lines, Inc.*, supra; *Grosse Pointe Farms Police Officers Ass'n v. Howlett*, Mich.App., 53 Mich.App. 173, 218 N.W.2d 801, 803 (1974); *Liberty Mutual Fire Ins. Co. v. Loring*, Ill.App., 91 Ill.App.2d 372, 235 N.E.2d 418, 420 (1968).

Here the parties by their unequivocal and all-embracing language agreed to submit "all claims, disputes and other matters in question arising out of, or relating to, this contract" to arbitration. Defendant, however, has refused to have the dispute submitted to the Architect as proposed by Pettinaro pursuant to § 2.27 of the General Contract, not because of any dispute as to the arbitrability of the payment issue but because of a dispute over whether submission to the Architect of the controversy is the proper method by which arbitration should be commenced in this matter. This is a procedural issue.

■ The question of what procedure must be followed to initiate the arbitration process is obviously a matter of construing the contract and thus within the scope of the arbitration agreement. The proper method of initiating arbitration under the contract is a matter for the decision of the arbitrator. *Local 12934, United Mine Workers of America v. Dow Corning Corp.*, 6th Cir., 459 F.2d 221, 223–224 (1972); *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, supra; *Stop & Shop Companies, Inc. v. Gilbane Bldg. Co.*, Mass.Supr., 364 Mass. 325, 304 N.E.2d 429, 432 (1973). This view is bolstered by the expression of policy against dividing disputes into substantive and procedural aspects to be determined partly by arbitrators and partly by the courts as found in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) and consistently followed in the federal courts, including our own circuit. *Local 595, Int'l. Assn. of Machinists v. Howe Sound Co.*, 3rd Cir., 350 F.2d 508, 511 (1965). This policy has been applied to actions arising under the Uniform Arbitration Act by *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, supra, a case involving substantially the same contract provisions as in the present matter.

■ Although the issue of the correct procedure to be followed to commence arbitration is a procedural issue, which may be resolved by the Arbitrator, it is clear that the correct procedure here is for Pettinaro to file a notice of a demand for arbitration since the Architect advised that he would not act on the controversy. Under the contract Pettinaro has the right to demand arbitration on the tenth day after the Architect refuses to act. See § 2.2.10.2 of the General Contract. Were the result otherwise, a party to a valid arbitration agreement could subvert the arbitration process in contravention of their express contractual agreement and the purpose of the Uniform Arbitration Act by merely refusing to participate in a hearing before the Architect. Pettinaro has a contractual remedy: to demand arbitration in accordance with the contract and the Rules of the American Arbitration Association. Because Pettinaro has never demanded arbitration it is not a "party aggrieved by the failure of another

to arbitrate" and therefore cannot seek the aid of this Court at this time. 10 *Del.C.* § 5703(a).

In view of the conclusion reached above, it is unnecessary to pass on the issues of compliance with 10 *Del.C.* § 5703(c) and of waiver.

Defendant's Motion For Summary Judgment is therefore granted. Instead, however, of dismissing this action, jurisdiction shall be retained so that this Court may grant further relief if the dispute is not resolved by arbitration with reasonable promptness or, if the arbitration does not comply with 10 *Del.C.,* Ch. 57. *City of Wilmington v. Wilmington Firefighters,* supra.