# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JOHN C. PAYNE,<br><br>       Plaintiff,<br><br>       v.<br><br>SAMSUNG ELECTRONICS AMERICA,<br>INC. and CELLULAR SALES<br>MANAGEMENT GROUP, LLC,<br><br>       Defendants. | )<br>)<br>)<br>)  C.A. No. N23C-03-193 FWW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: December 18, 2023
Decided: February 21, 2024

*Upon Defendant Samsung Electronics America, Inc.'s Motion to Compel Arbitration, Dismiss Plaintiff's Claims and Stay All Proceedings, Treated as a Motion to Dismiss*

**GRANTED**

## MEMORANDUM OPINION

David C. Malatesta, Jr. Esquire SHELSBY & LEONI, 221 Main Street, Wilmington, DE 19804, Attorney for Plaintiff John C. Payne.

Donald M. Ransom, Esquire, Daniel P. Daly, Esquire, CASARINO CHRISTMAN SHALK RANSOM & DOSS, P.A., 1000 N. West Street, Suite 1100 Wilmington, DE 19899, Attorneys for Defendant Samsung Electronics America.

Christopher T. Logullo, Esquire, COBB & LOGULLO, 3 Mill Road, Suite 301, Wilmington, DE 19806

**WHARTON, J.**

## I.     INTRODUCTION

The Court has before it Defendant Samsung Electronics America, Inc.'s ("Samsung") Motion to Compel Arbitration, Dismiss Plaintiff's Claims, and Stay all Proceedings ("Motion").[1]  Plaintiff John C. Payne ("Payne") opposes the Motion.[2] Defendant Cellular Sales Management Group, LLC ("Cellular Sales") does not oppose Samsung's request to compel arbitration, provided its crossclaim is not extinguished.[3]  In its response to the Motion,  Cellular Sales opposed a stay of all proceedings in the underlying case.[4]  At argument, however, it stated that it would not oppose a stay if it were permitted to participate in discovery during the arbitration process.

For the reasons explained below, Samsung's Motion to Compel Arbitration and to Dismiss Plaintiff's Claims and Stay All Proceedings, treated as a Motion to Dismiss, is **GRANTED**.  The Amended Complaint is **DISMISSED.**  The crossclaim of Cellular Sales is not dismissed, however.  The proceedings between Cellular Sales and Samsung on Cellular Sales' crossclaim in this Court are **STAYED** to the extent that Cellular Sales is permitted to participate in discovery during any arbitration process.

---

[1] Samsung's Mem. of Law, D.I. 27.
[2] Pl.'s Resp., D.I. 33.
[3] *Id.*
[4] *Id.*

## II.    FACTS AND PROCEDURAL HISTORY

Payne's Amended Complaint alleges that in May 2021 he purchased a Samsung Galaxy S-10+ Smartphone and a car charger at a Verizon store in Salisbury, Maryland.[5]  While driving in Newark, Delaware with the phone next to his right leg, the phone burst into flames causing severe burns to Payne's right leg and hip.[6]  He brings claims for Negligence, *Res Ipsa Loquitor*, and Breach of Warranty.[7]  Cellular Sales answered and crossclaimed against Samsung for contribution and/or indemnification.[8]

Samsung moves to dismiss.  Although the title of the Motion purports to move for dismissal of Payne's claims, the Motion itself does not make that request. Instead, it suggests that "this Court should order arbitration and stay the proceedings without reaching the question of whether the Arbitration Agreement covers the claims in the Complaint;"[9] "In addition to compelling arbitration of Plaintiff's claims, the Court should stay all further proceedings in this litigation pending arbitration;"[10] and, "For the reasons set forth above, [Samsung] respectfully requests

---

[5] Amend. Compl. at ¶ 10, D.I. 3.
[6] *Id.* at ¶¶ 11, 12, 14, 16.
[7] *Id.*
[8] Cellular Sales' Ans. and Crossclaim., D.I. 9.
[9] Samsung's Mem. of Law at 23, D.I. 27.
[10] *Id*. at 24.

that the Court (1) order plaintiff to submit his claims to binding arbitration, and (2) stay this action pending the outcome of any such arbitration…"[11]

On December 22, 2023, the Court wrote to the parties.[12] It noted that in *Jones, et al. v. 810 Broom Street Operations, Inc.,*[13] cited by Samsung, the Court stated, "This Court has the authority [to] determine whether a valid and enforceable arbitration agreement exists for purposes of determining whether it has subject matter jurisdiction," but, it also stated, "It is well settled in Delaware that the power to compel arbitration lies exclusively with the Court of Chancery." [14] In an effort to clarify the intent of the motion and give all parties an opportunity to comment, the Court posed two questions: "(1) in light of *Jones*, does this Court have the authority to compel the Plaintiff to submit to binding arbitration; and (2) if not, does Samsung seek dismissal of the Complaint under Superior Court Civil Rule 12(b)(1)?".[15]

In its response, Samsung acknowledges that this Court does not have the authority to compel arbitration.[16] Accordingly, it seeks dismissal of the Amended Complaint.[17] Cellular Sales agrees that if this Court finds a valid binding arbitration

---

[11] *Id*. at 25.
[12] D.I. 38.
[13] 2014 WL 1347746 (Del. Super. Ct. Apr. 7, 2023).
[14] *Id.* at *1.
[15] D.I. 38.
[16] D.I. 39.
[17] *Id.*

4

agreement, it does not have subject matter jurisdiction to compel arbitration.[18] It does not oppose Samsung's motion provided that its crossclaim is not extinguished.[19]

### III. THE PARTIES' CONTENTIONS

In its Motion, brought under Superior Court Civil Rule 12(b)(1), Samsung argues that this Court lacks subject matter jurisdiction because Payne entered into a binding agreement to arbitrate his claims against Samsung.[20] In particular, it contends that the parties manifested their mutual consent to arbitrate claims in three ways: (1) Payne entered into a valid "shrinkwrap" arbitration agreement;[21] (2) Payne entered into a valid arbitration agreement based on the notice inside the box with his phone;[22] and (3) Payne entered into a valid arbitration agreement through the "clickwrap" process during device activation.[23] As clarified, the Court understands

---

[18] D.I. 40.

[19] *Id.*

[20] Samsung's Mem. of Law at 9-23, D.I. 27.

[21] *Id.* at 14-17. A "shrinkwrap" agreement is one where notice of the contractual terms is provided on the exterior packaging of the product which terms consumers are presumed to accept when they open or use the product. *Id.* at 14.

[22] *Id.* at 17-19.

[23] *Id.* at 19-21. A "clickwrap" agreement is one where the customer is presented with the terms of the agreement during the activation process and must affirmatively "click" a box accepting those terms before continuing with the activation process. *Id.* at 19.

Samsung now to be seeking an order dismissing all of Payne's claims and staying Cellular Sales' crossclaim pending the outcome of that arbitration.[24]

In his response, Payne describes how his purchase of the phone occurred.[25] He supports that description by affidavit.[26] Payne states that he purchased the phone at a Verizon store in Maryland.[27] He was shown the new phone after it had been removed from the box by the salesperson and he did not open or review the box prior to the salesperson removing the phone.[28] The salesperson then took his old phone and set up his new phone by transferring the data from his old phone to the new one.[29] After the new phone was set up, Payne was given the phone and a bag with

---

[24] *See,* D.I. 39. Samsung would be amenable to Cellular Sales participating in discovery as part of an arbitration process, however.

[25] Pl.'s Resp., D.I. 33.

[26] *Id.* Ex 1. D.

[27] *Id.* at ¶¶ 1-2. It appears Payne may not have been the actual purchaser of the phone. Verizon Wireless Service, LLC ("Verizon") originally was named as a defendant in the Amended Complaint. D.I. 3. Later, Verizon was dismissed. D.I. 22. Prior to being dismissed, however, like Samsung, it moved to compel arbitration. D.I. 16. Attached to that motion was a "Service Summary" showing the purchase of two Samsung cell phones with separate cell phone numbers. D.I. 16, at Ex. A. The purchaser listed is Patricia Payne, presumably Payne's wife, not Payne himself. *Id.* Whether this fact is significant is not before the Court because the parties have not raised it as an issue. It is interesting to the Court to note, though, that the documents attached to Verizon's motion include a Customer Agreement for each phone, signed by Patricia Payne, for "settlement of all disputes [with Verizon] by arbitration instead of jury trial." *Id.* at Exs. A, C and D.

[28] *Id.* at ¶ 3.

[29] *Id.* at ¶ 4.

6

the box for the new phone inside, and probably a car phone charger.[30] At no time did he understand that he had entered into a binding contract with Samsung to waive his right to a jury trial and resolve any dispute with Samsung through binding arbitration.[31] Based on these facts, Payne urges the Court to conclude: (1) there was no contract between Samsung and Payne due to a lack of mutual assent and a failure of consideration;[32] and (2) Payne did not clearly express an intent to waive his right to a jury trial.[33]

Cellular Sales initially did not oppose Samsung's motion to compel arbitration provided its crossclaim was not extinguished.[34] It did oppose a stay if arbitration were ordered, suggesting that the parties should jointly engage in discovery while arbitration moves forward.[35] In response to the Court's inquiry, it does not oppose dismissal as long as its cross-claim is not extinguished.[36]

## IV. STANDARD OF REVIEW

A motion to dismiss based on lack of subject matter jurisdiction implicates Superior Court Civil Rule 12(b)(1). The burden rests on the plaintiff to prove that

---

[30] *Id.* at ¶ 5.
[31] *Id.* at ¶ 6.
[32] *Id.* at ¶ 10.
[33] *Id.* at ¶ 11.
[34] Cellular Sales' Resp., D.I. 28.
[35] *Id.* at ¶ 9.
[36] D.I. 40.

7

jurisdiction exists, and "where the plaintiff's jurisdictional allegations are challenged through the introduction of material extrinsic to the pleadings, he [or she] must support those allegations with competent proof." [37] To determine if Payne has met his burden, the Court may consider the pleadings, and matters extrinsic to the pleadings.[38] In deciding whether a matter is required to be arbitrated for purposes of determining subject matter jurisdiction, this Court must assess, at most: "(1) Whether a valid binding arbitration agreement exists; and (2) Whether the scope of the agreement covers all of the parties' claims."[39] The Court may be divested of determining arbitrability, however, if "the parties clearly and unmistakably provide otherwise."[40]

## V. DISCUSSION

Both the Federal Arbitration Act ("FAA")[41] and Delaware's Uniform Arbitration Act[42] recognize the validity and enforceability of agreements to settle

---

[37] *Abbott v. Vavala,* 2022 WL 453609, at *5 (Del. Super. Ct. Feb. 15, 2022) (quoting *Lewis v. AimCo Properties, LP,* 2015 WL 557995 (Del. Ch. Feb. 10, 2015).
[38] *Id.*
[39] *Antognoli v. Christiana Care Health Serv.,* 2023 WL 5441891 (Del. Super. Ct. Aug. 22, 2023) (citing *Bacon v. Avis Budget Grp., Inc.,* 959 F.3d 590, 599 (3d Cir. 2020)).
[40] *Agspring, LLC v. NGP X US Holdings, L.P.,* 2022 WL 17367807, at *2 (Del. Dec. 2, 2022) (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002).
[41] 9 U.S.C. § 2.
[42] 10 *Del. C*. § 5701.

8

disputes through arbitration rather than by litigation in courts. The FAA "establishes 'a liberal federal policy favoring arbitration.'"[43] Similarly, the public policy of Delaware "favors resolution of disputes through arbitration."[44] The Court's first task is to determine whether a valid agreement to arbitrate existed between Payne and Samsung.

Under Delaware law, contract formation requires mutual assent, meaning a complete meeting of the minds of the parties.[45] No agreement to arbitrate exists unless there is a clear expression of such an intent.[46] Establishing a meeting of the minds and mutual assent turns on the existence of "reasonable notice to each contracting party of the contractual terms."[47]

There seems to be little dispute that, had Payne gone through what the Court assumes to be the regular process one goes through when purchasing a cell phone, he would have encountered the "shrinkwrap" arbitration agreement notice on the exterior of the box; the arbitration notice included on the inside of the box, and the

---

[43] *Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 506 (2017) (quoting *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983)).

[44] *Graham v. State Farm Mut. Auto Ins. Co.,* 565 A.2d 908, 911 (Del. 1989) (citing *Pettinaro Constr. Co. v. Harry C. Partridge, Jr. & Sons, Inc.,* 408 A.2d 957, 961 (Del. Ch. 1979)).

[45] *United Health Alliance, LLC v. United Medical, LLC,* 2913 WL 6383026, at *6 (Del. Ch. Nov. 27, 2013).

[46] *Id.*

[47] *Noble v. Samsung Electronics America, Inc.* 682 F. App'x. 113, 116 (3d. Cir. 2017).

"clickwrap" agreement when he attempted to activate his device. Under those circumstances, Payne would be hard pressed to claim ignorance of the arbitration agreement, or that he did not assent to it. Samsung cites substantial authority, which the Court accepts, and which Payne does not challenge persuasively,[48] confirming that enforceable contracts may be formed in the context of consumer electronics purchases by "shrinkwrap" agreements, inside the box agreements, and "clickwrap" agreements.[49]

In Payne's telling, he was shown the phone after it was taken out of the box by the salesperson, who transferred the data from his old phone and set up his new phone, after which he was given a bag with the phone's box, and a car phone charger he also had purchased.[50] It is those facts upon which the Court must rely to determine if Payne had inquiry notice. Thus, the question becomes, does Payne's professed ignorance of those notices, which the Court must accept at this stage of the proceedings, matter? Samsung contends that it does not, arguing that Payne had "inquiry notice."

---

[48] Payne cites *Chilutti v. Uber Technologies, Inc.* 300 A.3d 430 (Pa. Super. Ct. July 19, 2023), but that case involved a "browsewrap" agreement, a type of agreement at "the other end of the spectrum" from the "clickwrap" agreements which courts have routinely found enforceable. *Id.* at 444.

[49] Samsung's Mem. of Law at 9-21, D.I. 27.

[50] Pl's Resp., Ex. 1 at ¶¶ 5-7, D.I. 28.

**A. The Notices**

It is useful to describe the various forms of notice Samsung provides to cell phone purchasers. They are the "shrinkwrap" agreement on the exterior of the box which Payne admits was in the bag he was given, and the notice inside the box, which the Court presumes remained inside the box when Payne received it, the "clickwrap"' agreement encountered during activation of the phone which Payne says was performed by a store employee, and any other notices of the arbitration agreement potentially available to Payne. For descriptions of those notices, the Court turns to the Certification of Nicole Cantwell ("Cantwell"), the Director of Digital Content & UXC/UI Strategy at Samsung.[51] Cantwell describes five places Samsung makes the arbitration agreement known to purchasers: (1) outside the box; (2) in a "Terms & Conditions" booklet inside the box; (3) during the activation process; (4) on Samsung's website at the specific URL provided on the outside of the box; and (5) on the device itself.[52]

The notice on the outside of the box notifies customers that, if they "use or retain" their phones, they "accept Samsung's Terms and Conditions including an Arbitration Agreement."[53] Also on the exterior of the box is a URL where Payne

---

[51] Samsung's Mem. of Law, Ex. B, D.I. 27.
[52] *Id.* Ex. B at ¶ 8.
[53] *Id.* Ex. B at ¶¶ 15, 16.

11

could find the full terms and conditions, including opt-out information.[54] The notice also informs customers that the full terms are available in the box and in their phone settings.[55] Further, at the top of the notice on the outside of the box, purchasers are informed: "Packaging contains…Terms and Conditions."[56] Cantwell provides a screenshot of the exterior notice with her Certification.[57]

The box contains a paper copy of the "Terms & Conditions" booklet.[58] That booklet alerts customers to the binding arbitration agreement and opt-out provision.[59] The booklet is titled in large bold font "**Terms & Conditions / Health & Safety Information.**"[60] Below the title, also in bold font is this notification: "**Electronic acceptance, opening the Product packaging, use of the Product, or retention of the Product constitutes acceptance of these Terms and Conditions.**"[61] Also on the cover page is a list of four sections, the first of which is, "Arbitration Agreement."[62] Cantwell provides a screenshot of the title page of the booklet and a copy of the booklet itself.[63]

---

[54] *Id.* Ex. B at ¶ 15.
[55] *Id.* Ex. B.
[56] *Id.* Ex. B at ¶ 16.
[57] *Id.* Ex. B at ¶ 18, and at Ex. B to Ex. B.
[58] *Id.* Ex. B at ¶ 23.
[59] *Id.* Ex. B.
[60] *Id.* Ex B at ¶ 24, and at Ex. A to Ex. B.
[61] *Id.* Ex. B.
[62] *Id.* Ex. B.
[63] *Id.* Ex. B at Ex. A to Ex. B.

When the device is turned on for the first time, users are presented with a series of interactive screens requiring them to complete the setup process before activating or using their phones.[64]  The setup process requires users to affirmatively accept the terms and conditions, including the arbitration agreement set out at a hyperlink, before they can complete the setup process and use their phones.[65]

The exterior of the box and the Terms and Conditions booklet both provide a URL link to the arbitration agreement – www.samsung.com/us/Legal/Phone-HSGuide/.[66]  The website lists four bullets, the first of which is "**Arbitration Agreement**" in bold.[67]  Finally, the printed Terms and Conditions booklet in the box advises users that the arbitration agreement can be found on the phone itself in the Samsung legal section of Settings.[68]

## B. Inquiry Notice

Samsung contends these various forms of notice put Payne on "inquiry notice" to discover the arbitration agreement.[69]  The concept of inquiry notice is frequently

---

[64] *Id.* Ex. B at ¶¶ 26-29.
[65] *Id.* Ex. B.
[66] *Id.* Ex. B at ¶ 20.
[67] *Id.* Ex. B at ¶ 21.
[68] *Id*. Ex. B at ¶ 32.
[69] *See,* Letters from Donald M. Ransom, Esquire dated November 20, 2023 and Dec. 7, 2023, D.I. 36 (Nov. 20) and D.I. 37 (Dec.7).

invoked in determining the applicability of relevant statutes of limitations,[70] but it is not limited that class of cases.[71] "A party is deemed to have inquiry notice 'upon discovery of facts constituting a basis for the cause of action, or [where the party] knows facts sufficient to put a person of ordinary intelligence and prudence on inquiry, which if pursued would lead to the discovery of such facts.'"[72] "The court should consider whether there were red flags that would have left a prudent person of ordinary intelligence to inquire further."[73]

Samsung refers the Court to four cases it argues support its contention that Payne was on inquiry notice – *McDougal v. Samsung Electronics America, Inc.*;[74] *Beture v. Samsung Electronics America, Inc.*;[75] *Taylor v. Samsung Electronics America, Inc.*;[76] and *Lewis v. Samsung Electronics America, Inc.*[77] *McDougal* was a

---

[70] *See, e.g. Lehman Brothers Holdings, Inc. v. Kee,* 268 A.3d 178 (Del. 2021); *Ocimum Biosolutions (India) Limited v. Astrazenica UK Limited,* 2019 WL 6726836 (Del. Super. Ct. Dec. 4, 2019); *In re Dean Witter Partnership Litigation,* 998 WL 422456 (Del. Ch. Jul. 17, 1998).

[71] *See, Wilmington Trust, National Association v. Sun Life Assurance Company of Canada,* 292 A.3d 1062 (Del. 2023).

[72] *Altenbaugh v. Benchmark Builders, Inc.* 2022 WL 176292, at \*2 (Del. 2022) (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,* 860 A.2d 312, 319 (Del. 2004).

[73] *Id.* (citing *Coleman v. Pricewaterhousecoopers, LLC,* 854 A.2d 838, 842 (Del. 2004).

[74] 2023 WL 6445838 (S.D. N.Y. Oct. 3, 2023).

[75] 2018 WL 4621586 (D. N.J. Jul. 18, 2018).

[76] 2018 WL 3921145 (N.D. Ill. Aug. 16, 2018).

[77] 2023 WL 7623670 (S.D. N.Y. Nov. 14, 2023).

putative class action alleging breaches of contract and various warranties.[78] The plaintiffs alleged that Samsung misled them into purchasing their devices by overstating the amount of "available memory."[79] There, as here, notice of the arbitration agreement was provided on the box, in a "Terms and Conditions" pamphlet in the box, and through an interactive set-up process on the phone's screen.[80] Unlike here, however, there is no allegation that a third party performed the set-up process. Rather, the plaintiffs argued that there was no binding agreement to arbitrate because the clickwrap process did not put them on notice of the terms of the agreement and the agreement was unconscionable and unenforceable,[81] arguments Payne does not advance directly. Nevertheless, *McDougal* is helpful for its discussion of "inquiry notice" which the Court found placed the plaintiffs on notice of the arbitration agreement's terms.[82] The Court observed that an offeree may be bound by certain terms of a contract, even if he does not have actual notice of those terms if he is on inquiry notice of them and assents to them by conduct that a reasonable person would understand to constitute assent.[83] "Offerees are on

---

[78] *McDougal,* 2023 WL 6445838, at *1.
[79] *Id.*
[80] *Id.*
[81] *Id.* at 3.
[82] *Id.*
[83] *Id.* (citing *Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 76 (2d Cir. 2017). Consistent with the arbitration agreement, *McDougal* applied New York law. *Id.* at *2. Samsung addresses choice of law. Samsung's Mem. of Law at 12-14, D.I. 7, while

inquiry notice 'where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law'"[84]

*Beture* was a class action where certain of the plaintiffs purchased their phones from a retailer that had already performed the clickwrap setup process prior to purchase.[85] For that reason, they claimed they lacked reasonable notice of, and did not agree to, an End User License Agreement ("EULA").[86] The Court found that argument both factually and legally deficient.[87] Factually, the Court noted that the EULA was displayed not only at setup, but also during the factory resets which several plaintiffs acknowledged they performed.[88] Further, the EULA also always was available for plaintiffs to read on the Settings menu.[89] More importantly, the Court found plaintiffs' argument legally deficient because:

> "[o]nce there is reasonable notice, a party is bound by those terms, even if he failed to read them." Defendant provided reasonable notice of the terms of the license agreement by displaying the EULA during the initialization of the [phone] and restricting activation of the phone until the Agreement was affirmatively assented to. **Even when a carrier store representative performed the [phone] initialization, a smartphone**

Payne does not. The Court sees no material difference between Delaware and New York for purposes of considering inquiry notice.

[84] *Id.* (quoting *Meyer,* 856 F.3d at 76).

[85] *Beture,* 2018 WL 4621586, at \*2.

[86] *Id.* at \*6.

[87] *Id.*

[88] *Id.* No such facts have been developed here, though.

[89] *Id.* Likewise, the arbitration agreement is available in the Settings menu here.

**user still has reasonable notice that use of the device is subject to terms and conditions. Where the user knew or should have known about such terms, the clickwrap agreement is enforceable.**[90]

*Taylor* presents facts similar to those here. In that case, plaintiff Taylor sued Samsung alleging he sustained injuries from a Samsung cell phone.[91] The phone was purchased for him by his company from a cellular service and given to him to use the same day.[92] The phone was accompanied by a "Health & Safety and Warranty Guide ("Guide") which stated on its from page that the manual should be read before operating the phone and that it contained important terms and conditions that the user accepted by using the device.[93] The next page again cautioned the user to read the manual before using the device and advised that it included an arbitration agreement.[94] Like the arbitration agreement here, the Guide was also made available online and on the phone itself in the Settings menu.[95] The first question before the Court was whether there was an enforceable agreement to arbitrate in the face of Taylor's contention that he never saw the Guide in the box because his employer purchased the phone, removed it from the box and gave it to him to use.[96] The Court

---

[90] *Id.* (citations omitted)(emphasis added).
[91] *Taylor,* 2018 WL 3921145 at *1.
[92] *Id.*
[78] *Id.*
[94] *Id.*
[95] *Id.* at *2.
[96] *Id.* at *3.

was not persuaded by Taylor, holding, "Whether plaintiff took advantage of the opportunity to read the terms and conditions does not affect the contract's enforceability; as long as there was a reasonable opportunity for plaintiff to read the terms and reject them, he is bound by them."[97]  "'[W]here there is no actual notice of the term, an offeree is still bound by the provision if he or she is on <u>inquiry</u> notice of the term and assents to it through the conduct that a reasonable person would understand to constitute assent.'"[98]  A contrary view '"would mean that purchasers can deny unwanted terms, as long as they avoid reading them prior to purchase and then have the product delivered to someone else.  With good reason, prior courts have rejected this outcome.  Similarly, this Court finds that Plaintiffs alleged lack of actual notice is not enough to overturn the valid arbitration agreement.'"[99]

Similar to *McDougal, Lewis* was a putative class action alleging breaches of contract and various warranties related to the purchase of Samsung smartphones.[100] As here, Cantwell provided a declaration describing the notices: (1)  on the exterior of the smartphone's box, including a URL where the full terms and conditions were found; (2) in a pamphlet titled "Quick Star Guide & Terms and Conditions;" and (3)

---

[97] *Id.*
[98] *Id.* (quoting *McNamara v. Samsung Telecomms. Am., LLC,* 2014 WL 5543955, at *2 (N.D. Ill. Nov. 3, 2014)) (emphasis in original).
[99] *Id.* at *5 (quoting *Hoekman v. Tamko Build. Prods., Inc.,* 2015 WL 9591471, at *7 (E.D. Cal. Aug. 26, 2015)).
[100] *Lewis,* 2013 WL 7623670, at *1.

18

through an interactive set-up process.[101] The plaintiff did not challenge the content of the arbitration agreement, rather he claimed that he did not unambiguously assent to the terms of the agreement because he never viewed the terms, which he argued were not presented clearly and conspicuously.[102] The Court found that the plaintiff agreed to the arbitration by virtue of using and retaining the phone as explained on the exterior "shrinkwrap" agreement and by going through the interactive set-up process.[103]

Payne maintains that the only contract he knowingly and voluntarily entered into was with Verizon, from whom he purchased the phone, to make monthly payments.[104] He never signed any contract with Samsung, nor is there evidence that he was made aware through the language on the exterior of the phone that he was agreeing to a contract with Samsung that contained an arbitration clause.[105] He also contends that there is a "complete lack of evidence to show that [he] received any consideration from Samsung for the proposed contract" since he paid full price to Verizon for the phone that allowed him to use the Verizon network.[106] Finally,

---

[101] *Id.* at *1-3.
[102] *Id.* at *6.
[103] *Id.* at *7.
[104] Pl.'s Resp. at ⁋ 9, D.I. 33.
[105] *Id.*
[106] *Id.* at ⁋ 10.

Payne maintains that Samsung has failed to show that he clearly and unambiguously waived his right to a jury trial.[107]

### C. Payne Was on Inquiry Notice.

The Court finds that Payne was on inquiry notice of the arbitration agreement. The first notice Payne received was the "shrinkwrap" notice on the exterior of the box. It is beyond dispute that Payne received the box. His Response says as much - "Once the transfer was complete, Plaintiff was handed his new phone along with a bag containing the phone's box as well as a car phone charger he recalled purchasing at the same time,"[108] and so does his affidavit – "Upon completion, I was handed my new phone along with a bag containing the phone's box. I believe I also purchased a car phone charger at the same time."[109]

All Samsung smartphones of the model purchased by Payne sold through Verizon were packaged in a box labeled on the outside with the notification to customers that if they "use or retain" their phones, they "accept Samsung's Terms and Conditions, including an Arbitration Agreement."[110] Had Payne looked at the box he clearly would have seen in bold font:

---

[107] *Id.* at ॥ 11.
[108] Pl.'s Resp. at ॥ 5, D.I 33. .
[109] *Id.* at Ex. 1 at ॥ 7.
[110] Samsung's Mem. of Law, Ex. B at ॥ 15, D.I. 27.

**IMPORTANT INFORMATION**

**If you use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty and opt-out information are at www. samsung.com/us/Legal/Phone-HSGuide/, and enclosed materials & device settings.**[111]

Had Payne read the "Important Information" he would have learned that there was an arbitration agreement as well as other terms and conditions he accepted by using or retaining the phone. He also would have learned that there were materials enclosed with the phone that explained the full terms and conditions, including the arbitration agreement as well as opt-out information. Finally, had he read the "Important Information" he would have learned that, in addition to the written materials included the phone's box, there was a URL link to all of that information. The Court finds that the statements in the notices on the exterior of the box constitute "facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued would lead to the discovery" of the arbitration agreement.[112] Those notices constituted "red flags that would have left a prudent person of ordinary intelligence to inquire further."[113]

---

[111] *Id.* Ex. B at ₱ 17.
[112] *Altenbaugh,* 2022 WL 276292, at *2.
[113] *Id.*

21

The cover page of the booklet, and the first few pages of the booklet itself found inside the box also put Payne on inquiry notice of the arbitration agreement. The booklet is titled in large, bold font "**Terms &Conditions / Health & Safety Information**," followed directly underneath with the following notice, also in bold:

> **Read this document before operating the mobile device, accessories or software (defined collectively and individually as the "Product") and keep it for future reference. This document contains important Terms and Conditions. Electronic acceptance, opening the Product packaging , use of the Product, or retention of the Product constitutes acceptance of the Terms and Conditions.**[114]

Directly under that statement are four bullet points, the first of which is "Arbitration Agreement."[115]

The Table of Contents notifies users of "Section 1: Arbitration Agreement."[116] The first page after the Table of Contents again notifies users of the arbitration agreement:

> Important Legal Information
>
> READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE.

---

[114] Samsung's Mem. of Law, Ex. B at ⁋ 24 and Ex. A to Ex. B, D.I. 27.
[115] *Id.*
[116] *Id.*

> Arbitration Agreement – This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung"). You can opt out of the agreement within 30 calendar days of the first consumer purchase by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information. For complete terms and conditions that bind you and Samsung, refer to the "Arbitration Agreement" section of this document.[117]

The Court finds it more probable than not that Payne had access to the booklet. Although Payne does not address whether the Terms and Conditions booklet was in the box in the bag he received from the sales representative, there appears to be no reason it would not be there. Had Payne looked at the Terms and Conditions booklet, he, like any reasonably intelligent and prudent person, upon encountering these notices on its exterior and immediately inside it, would have been on notice to inquire further.

Payne does not directly challenge the adequacy of the notices contained on the box and in the box. He simply says "there is no evidence to suggest that Plaintiff was put on notice through boilerplate language on the bottom of a box that he was agreeing to a contract with Samsung that contained an arbitration clause[.]"[118] But, it is Payne's own inattention in failing to look at the box or the materials contained

---

[117] *Id.*

[118] Pl.'s Resp. at ⁋ 9, D.I. 33.

23

in it that made him unaware of the contractual relationship into which he was entering with Samsung.[119] The notices provided to Payne on the box and in the box are identical to those considered by the Court in *Visadi v. Samsung Electronics America, Inc.*[120] There, the Court held, "the print materials provided to Plaintiffs with their…phone purchases establish – independently and certainly in combination – Plaintiffs had reasonably conspicuous notice of contract terms to support mutual assent to the Arbitration Agreement."[121] This Court, having reviewed the language of the notices as well as photocopies of them provided in Cantwell's Certification, agrees that the notices, individually and in combination, provided Payne with "reasonably conspicuous notice of contract terms to support mutual assent to the arbitration agreement."[122] Thus, having been put on inquiry notice, Payne's argument that he did not realize he was entering into a contractual relationship with Samsung involving mutual obligations and consideration is unpersuasive.

### D. The Arbitration Agreement Delegates Questions of Arbitrability to the Arbitrator.

---

[119] The Court suspects that had Payne considered the question more carefully, he would have understood that he had a continuing relationship with Samsung, despite purchasing the phone from Verizon, due, at a minimum, to the occasional updates to the factory installed Android operating system and the possibility of future factory resets.

[120] 2021 WL 5578736 (D. N.J. Nov. 29, 2021).

[121] *Id.* at *10.

[122] *See, Id.*

24

Having determined that a valid agreement to arbitrate exists, the Court's next task is to determine whether the scope of the agreement covers all of the parties' claims.[123] The Court may be relieved of that task, however, if "the parties clearly and unmistakably provide otherwise."[124] Here, the parties did just that by agreeing to arbitrate questions of arbitrability.[125] The arbitration agreement provides that, "[t]he arbitrator shall decide all issues of interpretation and application" of the agreement.[126] Further, the agreement incorporates the rules of the American Arbitration Association which provide that the arbitrator decides objections relating to "the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim."[127]

### E. Cellular Sales' Crossclaim is Conditionally Stayed, but not Dismissed.

Cellular Sales maintains a crossclaim against Samsung for contribution and/or indemnification.[128] Superior Court Civil Rule 13(g) allows a party to file cross claims against "co-parties."[129] Although cross-claims cannot be asserted against a party who was dismissed from the action prior to the assertion of the cross-

---

[123] *Antognoli,* 2023 WL 5441891, at *2 (citing *Bacon v. Avis Budget Grp., Inc.* 959 F.3d 590, 599 (3d. Cir. 2020)).
[124] *Agspring,* 2022 WL 17367807, at *2.
[125] Samsung's Mem. of Law, Ex. B at ⁋ 10, D.I. 27.
[126] *Id.*
[127] *Id.*
[128] Cellular Sales' Ans. and Crossclaim, D.I. 9.
[129] Super. Ct. Civ. R. 13(g).

claim, "'dismissal of the original complaint as to one of the defendants named therein does not operate as a dismissal of a cross-claim filed against such defendant by a co-defendant.'"[130] In other words, where a crossclaim is properly filed against a co-party, "'[it] [will] not cease to be so because the party to whom they were addressed subsequently ceased to be a co-party.'"[131] Accordingly, Cellular Sales' properly asserted, pre-existing crossclaim against Samsung survives the dismissal of Payne's complaint.

Cellular Sales does not oppose Samsung's motion to dismiss. It did oppose a stay initially, correctly observing:

> [It] would be more beneficial for the parties to engage in discovery (regardless as to whether Plaintiff's case against Defendant Samsung proceeds in compulsory arbitration). The parties should jointly engage in discovery depositions of witnesses, jointly examine the cell phone at issue, and exchange expert discovery/reports so that all matters may proceed expeditiously and without duplication.[132]

At argument, Cellular Sales withdrew its opposition to a stay, conditioned on its ability to participate in discovery during the arbitration process. That arrangement strikes the Court as reasonable. Therefore the Court will stay the crossclaim

---

[130] *Antognoli*, 2023 WL 5441891, at *3 (quoting *Samoluk v. Basco, Inc.* 1989 WL 1235703, at *2 (Del. Super. Ct. Nov. 3, 1989)).

[131] *Id.* (quoting *Washington House Condominium Association of Unit Owners v. Daystar Sills, Inc.* 2017 WL 3412079, at *9 (Del. Super. Ct. Aug. 8, 2017)).

[132] Cellular Sales' Resp. at ¶ 9, D.I. 9.

proceedings conditioned on Cellular Sales ability to participate in discovery during the arbitration process.

## V.    CONCLUSION

**THEREFORE,**   for the reasons explained above, Defendant Samsung Electronics America Inc.'s Motion to Compel Arbitration, Dismiss Plaintiff's Claims, and Stay All Proceedings, treated as a Motion to Dismiss, is **GRANTED.** Plaintiff John C. Payne's Amended Complaint is **DISMISSED.**  The crossclaim of Defendant Cellular Sales Management Group, LLC against Defendant Samsung Electronics America, Inc. is **not** dismissed.  The crossclaim is **STAYED**, however, conditioned upon Defendant Cellular Sales Management Group, LLC's ability to jointly participate in discovery during the anticipated arbitration process.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

27